**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 26-CR-042 (AHA)** |
| **v.** | |
| **KELVIN LEON,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing, is intended to outline to the Court relevant matters relating to what the government believes is an appropriate sentence in this case. To inform its allocution, the government has reviewed the application of the advisory Sentencing Guidelines; the Final Presentence Report ("PSR") prepared by U.S. Probation Officer ("USPO") Ms. Haley E. Spicer, *see* PSR ECF #27, and USPO Ms. Spicer's sentencing recommendation, *see* ECF #28; the relevant factors set forth in 18 U.S.C. § 3553; and the defendant's plea of guilty in this case. Based on that thorough and comprehensive review, the government respectfully avers that this Court should sentence the defendant to 37 months of incarceration, which is the high end of the applicable guideline range for Count One, followed by 36 months of Supervised Release and a concurrent term of incarceration of 24 months incarceration for Count Two, with no additional Supervised Release to follow.

I. **INTRODUCTION**

On March 9, 2026, the defendant pled guilty to Counts One and Two of an Information charging him with Possession of a Machine Gun, in violation of 18 U.S.C. § 922(o), and Endangerment with a Firearm (Public Place), in violation of D.C. Code § 4503(a)(2)(B), pursuant to a written plea agreement.

1

## II.  <u>FACTUAL BACKGROUND</u>

On July 14, 2025, Metropolitan Police Department ("MPD") Investigator Kelemen received a firearm tip from an anonymous citizen. The tip stated that a gentleman in the window of apartment "101" pointed a firearm out of the window and fired it in the air. The anonymous caller described the shooter as a Hispanic male, in his mid-20s, possibly 5'7", with a skinny build, dark hair in a bowl cut, and wearing a tank top with multiple tattoos on his chest.

Investigator Kelemen reached out to the phone number provided on the tip. The anonymous citizen answered the phone and spoke with Investigator Kelemen. After further investigation, Investigator Kelemen was able to obtain a D.C. Superior Court Search Warrant for a location in the 2400 block of Marion Barry Avenue SE, Washington, D.C. 20020.

On July 24, 2025, members of MPD's Violent Crime Suppression Division ("VCSD") responded to 2400 Marion Barry Avenue SE, Apartment 101, Washington, D.C. 20020 to execute the search warrant (2025 CSWSLD 003161). MPD Seargent Wershbale and MPD Investigator Hinostroza conducted a knock and announce. The door was opened by an occupant. The defendant and another individual were present inside the residence and detained in the living room without incident. Once the residence was secured and photographed, a search of the premises was conducted. Inside one of the bedrooms in the property, law enforcement found and seized a Privately-Made-Firearm (PMF), manufactured from a "Polymer80" kit, 9mm semiautomatic pistol bearing no serial number, with fifteen rounds in the magazine and a Machine gun Conversion Device ("MCD"). *See* Figures 1 and 2 below. A MCD is utilized to convert a semiautomatic firearm to one that shoots more than one round of ammunition, without manual reloading, by a single function of the trigger, i.e., a machine gun.



*Figure 1: Recovered Ghost Gun with MCD (circled in red)*



*Figure 2: Magazine and 15 Rounds of Ammunition*

In that same bedroom, investigators also located a satchel bag that contained multiple identification cards and bank cards for Defendant Leon, who had been detained in the living room of the residence.

3

Based on those facts and physical description given to officers of the person firing a firearm out of the window of the apartment matched Defendant Leon and circumstances surrounding the seized evidence, Defendant Leon was placed under arrest and transported to MPD's 6th District station for processing. Once at the 6th District, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Nobi Thomas ("SA Thomas"), MPD Investigator Tipps, and MPD Investigator Hernandez-Martinez interviewed Defendant Leon after he voluntarily waived his Miranda rights. During that discussion, Defendant Leon told Special Agent Thomas and the other investigators that: (i) an incident took place where two men were touching his scooters that belonged to him; (ii) the scooters were located in the grassy area in the front of the apartment building; (iii) the two men began to argue about the scooters when Defendant Leon placed his firearm out of the window, firing one shot towards the sky to scare them off; (iv) Defendant Leon  purchased the seized firearm approximately three weeks before the interview; and (v) Defendant Leon purchased the MCD after one week of owning the firearm. Defendant Leon displayed knowledge of the function and capability of the MCD he affixed to the firearm. Defendant Leon explained that he affixed the MCD to the firearm after watching instructional videos on YouTube.

ATF members queried the ATF National Firearms Act ("NFA") Database and the ATF Federal Licensing System to determine whether Defendant Leon  had an NFA registration, a Federal Firearms License, or a permit for the PMF (bearing no serial number), 9mm semi-automatic pistol, affixed with a MCD. No such registration, license, or permit was found.

The defendant possessed the machine gun and discharged a projectile from the machine gun outside of the apartment window voluntarily and on purpose, and not by mistake or accident. The defendant did not have permission to fire the machine gun under District or federal law, and his action of doing so was not under circumstances constituting self-defense or defense of others.

4

There are no firearms or ammunition manufacturers or distributors in the District of Columbia, therefore, the firearm and ammunition in this case necessarily traveled in interstate commerce before it was possessed by the defendant in the District of Columbia.

### III.   SENTENCING CALCULATION

#### Base Offense Level

The guideline for Count One, which was consistent with the plea agreement, Possession of a Machine Gun, in violation of 18 USC §§ 922(o) and 924(a)(2), is found in USSG §2K2.1 of the guidelines. That section provides that an offense involving possession of a machine gun (a firearm described in 26 USC § 5845(a)) has a base offense level of 18. USSG §2K2.1(a)(5). *See* PSR ECF No. 27 at ¶18. The defendant possessed the firearm in connection with another felony offense – Endangerment with a Firearm – so four levels are added. USSG §2K2.1(b)(7)(B); PSR ECF No. 27 at ¶19. Therefore, the Adjusted Offense Level subtotal is Level 22. *Id.* at ¶23. The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. *Id.* at ¶25. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b). *Id.* at ¶ 26. Thus, the defendant's total Offense Level is Level 19. *Id.* at ¶28.

For Count Two, USPO Ms. Spicer determined that the DC Voluntary Guidelines apply for felony offenses. Pursuant to 1.4 of the guidelines, the sentencing court shall use the Sentencing Guidelines Manual in effect on the date of plea or verdict, unless both parties agree to use the version in effect at the time of sentencing. *Id.* at ¶29.

For the U.S. Code Offense (Count One): The total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I. *Id.* at ¶33.

For the DC Code Offense (Count Two): The total criminal history score is 0, which establishes a Criminal History Score A. *Id* at ¶35.

As outlined in the PSR, USPO Ms. Spicer found, and consistent with the plea agreement, that the Court's sentencing options for custody for Count One, the maximum term of imprisonment is 10 years for this Class C Felony. 18 U.S.C. § 922(o) and 18 U.S.C. § 924(a)(2). *Id.* at ¶79. For Count Two, the maximum term of imprisonment is five years for this Class D Felony. 22 D.C. Code § 4503.03(a)(2)(B). *Id.* at ¶80.

In addition, USPO Ms. Spicer found, and consistent with the plea agreement, that based upon a total offense level of 19 and a criminal history category of I, the guideline imprisonment range for Count One is 30 months to 37 months. *Id.* at ¶81. As for Count Two, the D.C. Guidelines rank all felony offenses in group by level of severity. The offense severity is based on the offense of conviction. The offense severity group for this Count is Group 8 and a Criminal History Category A is 6 to 24 months incarceration. The defendant is eligible for a prison, long-split, short-split, or probation permissible sentence. *Id.* at ¶82.

### IV.    UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark"

for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd. *Dorcely*, 454 F.3d at 375.

Notably, although the defendant has no prior adult convictions - as noted in the Final PSR ECF #27 at ¶¶31-32, his behavior in the instant case is very concerning. Indeed, the fact that the defendant while in a window of an apartment pointed a firearm out of the window and fired the firearm demonstrates how dangerous the defendant is to our community. Consequently, this Court should sentence the defendant to 37 months of incarceration, the high end of the applicable

7

guideline range for Count One, followed by 36 months of Supervised Release and a concurrent term of incarceration of 24 months incarceration for Count Two, with no additional Supervised Release to follow.

## V.   SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Defendant Leon.

**(1)   The nature and circumstances of the offense and the history and characteristics of the defendant**.

### (A)   The nature and circumstances of the offense

Here, the nature and circumstances of the offenses counsel in favor of a significant term of imprisonment. The nature and circumstances surrounding the charged offenses are very troubling. Indeed, the circumstances of the crimes here involved the defendant firing a machine gun in a densely populated neighborhood where he placed all nearby citizens with the possibility of death or serious bodily injury. Notably, the defendant has pleaded guilty to not only possessing the firearm, which was converted into a machine gun, but endangering others by firing it in the community. This combination of circumstances is alarming and poses significant danger to our community.

It cannot be overstated that the possession and firing a machine gun in a neighborhood was extremely dangerous. The increase of urban shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the defendant's possession of machine gun and firing it out of an apartment window placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting

cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at \*2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at \*7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), aff'd, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020).

More broadly, a loaded firearm that is being fired in the community is a deadly weapon. Here, the firearm, with a Machine gun Conversion Device which allowed the firearm to fire automatically, thus had the ability with a single pull of the action to end many lives. In fact, as in the instant case, a firearm can escalate a mundane disagreement or a petty offense into a deadly encounter. And the reason law enforcement targets the possession of firearms prior to the commission of a crime is because once an individual makes the decision to produce a firearm and pull the trigger, law enforcement is powerless to intervene. This offense was particularly disturbing and alarming, because defendant Leon had a loaded machine gun and

9

he alone decided to pull the trigger all the while he knew citizens were outside. In sum, the defendant's actions were dangerous offenses justifying a lengthy term of incarceration.

Simply stated, the government respectfully avers that the defendant is a significant danger to the community. His criminal actions in this matter demonstrate that a high-end sentence is in the interests of justice and would punish the defendant appropriately.

### (B) The history and characteristics of the defendant

The defendant is a 26-year-old man, who does not have any prior convictions. However, that fact does not minimize the severe danger when the defendant decided to fire his illegal firearm from out an apartment window in a neighborhood in our city where citizens lived and called home.

Significantly, in making its current sentencing recommendation to the Court, the government has also reviewed the defendant's Personal and Family Data as outlined in the Draft PSR, which outlined the defendant's relationship with his family and family history. *See id.* at ¶¶39-51. Further, the government has reviewed the defendant's Mental and Emotional Health and Substance Abuse backgrounds as outlined in his PSR. *Id.* at ¶¶55-62. Defendant Leon reported a history of substance abuse including alcohol, marijuana, cocaine, and "tusi." *Id.* at ¶57. Further, defendant Leon explained that "tusi" is a pink powder comprised of various pharmaceutical drugs that is popular in Colombia. *Id.* at ¶61.

### (C) The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of Defendant

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2)(B), (D). Importantly, this Court is well aware of the impact that

illegal loaded firearms and shooting have had on the District of Columbia, and the need to deter that conduct. Therefore, a sentence that provides both specific and general deterrence is especially important in this case.

**(D) The need to avoid unwarranted sentencing disparities among defendants with similar records**

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently— differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. As discussed *supra*, this Court should sentence the defendant to 37 months of incarceration, which is the high end of the applicable guideline range for Count One, followed by 36 months of Supervised Release and a concurrent term of incarceration of 24 months incarceration for Count Two, with no additional Supervised Release to follow. Indeed, the government's requested sentence is reasonable, as it strikes the balance between considering the defendant's background and the facts of this case.

## VI.    CONCLUSION

For the foregoing reasons, the United States recommends that this Court sentence Defendant Leon to 37 months of incarceration, which is the high end of the applicable guideline range for Count One, followed by 36 months of Supervised Release and a concurrent term of incarceration of 24 months incarceration for Count Two, with no additional Supervised Release to follow.

The government respectfully advances that its recommended sentence to the Court would therefore reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offenses.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:    */s/ Emory V. Cole*
EMORY V. COLE
PA. Bar No. 49136
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Emory.Cole@usdoj.gov